# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |

This document relates to:
*Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 04-cv-1076 (GBD)(SN)

### NON-U.S. NATIONALS' MEMORANDUM OF LAW IN SUPPORT OF REVISED MOTION FOR FINAL JUDGMENTS AS TO LIABILITY AND FOR PARTIAL FINAL DAMAGES JUDGMENTS AGAINST THE TALIBAN

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
Ethan Greenberg, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000
Fax: (212) 278-1733
Email:  jgoldman@andersonkill.com
        bstrong@andersonkill.com
        agreene@andersonkill.com
        egreenberg@andersonkill.com
*Attorneys for Plaintiffs*

Dated:   New York, New York
         June 15, 2023

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL BACKGROUND.......................................................................... 5

        A.      Applicable Orders ..................................................................................... 5

        B.      Related Cases ............................................................................................ 6

        C.      Moving Plaintiffs ...................................................................................... 8

III.    THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER THE
        TALIBAN. ............................................................................................................. 8

IV.     LIABILITY JUDGMENTS FOR A SUBSET OF THE O'NEILL PLAINTIFFS
        SHOULD BE EXTENDED TO MOVING PLAINTIFFS ............................... 12

        A.      The Complaint Was Duly Served .......................................................... 12

        B.      The O'Neill Plaintiffs Obtained Liability Judgments Against the Taliban .......... 12

V.      DAMAGES SHOULD BE AWARDED AGAINST THE TALIBAN JOINTLY
        AND SEVERALLY............................................................................................. 13

        A.      Background............................................................................................. 13

                1.      New York Law Applies to the Common Law Claims at Issue Here. ....... 14

        B.      Moving Plaintiffs with Claims Arising Under the Common Law Seek
                Application of Uniform Damages Principles as Those Employed Under
                the ATA. ................................................................................................. 18

        C.      Economic Damages for Estates ............................................................. 19

        D.      Punitive Damages .................................................................................. 21

        E.      Prejudgment Interest ............................................................................. 22

VI.     CONCLUSION.................................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstead v. National RR Passenger Corp.*,
 954 F. Supp. 111 (S.D.N.Y. 1997).................................................................................14, 15

*Ashton v. al Qaeda Islamic Army*,
 02-CV-6977 (GBD)(SN) .......................................................................................... *passim*

*Baker v. Socialist People's Libyan Arab Jamahirya*,
 775 F. Supp. 2d 48 (D.D.C. 2011).......................................................................................22

*Bauer v. Al Qaeda Islamic Army*,
 02-CV-7236 (GBD)(SN) .......................................................................................... *passim*

*Calder v. Jones*,
 465 U.S. 783 (1984)..............................................................................................................11

*Chrysler Capital Corp. v. Century Power Corp.*,
 778 F. Supp. 1260 (S.D.N.Y. 1991)...........................................................................9, 10, 11

*Est. of Heiser v. Islamic Republic of Iran*,
 466 F. Supp. 2d 229 (D.D.C. 2006) ......................................................................................6

*Flatow v. Islamic Republic of Iran*,
 999 F. Supp. 1 (D.D.C. 1998)..............................................................................................19

*Estate of Heiser v. Islamic Rep. of Iran*,
 659 F. Supp. 2d 20 (D.D.C. 2009).......................................................................................17

*Jenco v. Islamic Rep. of Iran*,
 154 F. Supp. 2d 27 (D.D.C. 2001) .......................................................................................16

*In re Magnetic Audiotape Antitrust Litig.*,
 334 F.3d 204 (2d Cir. 2003).................................................................................................11

*Merck Eprova AG v. Gnosis S.p.A.*,
 No. 07 CIV. 5898 (RJS), 2008 WL 5336587 (S.D.N.Y. Dec. 12, 2008) ........................10, 11

*Roth v. Islamic Republic of Iran*,
 78 F. Supp. 3d 379 (D.D.C. 2015)........................................................................................20

*In re Sept. 11 Litig.*,
 802 F.3d 314 (2d Cir. 2015).................................................................................................23

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*In re Sept. 11 Litig.*,
    811 F. Supp. 2d 883 (S.D.N.Y. 2011).......................................................................18

*Stethem v. Islamic Rep. of Iran*,
    201 F. Supp. 2d 78 (D.D.C. 2002)............................................................................16

*In re Terrorist Attacks on September 11, 2001*,
    03-md-1570...........................................................................................................6, 7, 22

*United States v. Int'l Bhd. of Teamsters*,
    945 F. Supp. 609 (S.D.N.Y. 1996)...........................................................................11

*Valore v. Islamic Republic of Iran*,
    700 F. Supp. 2d 52 (D.D.C. 2010)............................................................................20

*Zonshayn v. Sackler Sch. of Med. (New York)*,
    No. 21 CIV. 5720 (AT), 2023 WL 24379 (S.D.N.Y. Jan. 3, 2023)...........................17

**Statutes**

18 U.S.C. § 2333(a) ...............................................................................................................13, 20

28 U.S.C. § 1605A(4) ...................................................................................................................6

28 U.S.C. § 1605A(c) .................................................................................................................19

49 U.S.C. § 40101 .......................................................................................................................23

18 U.S.C. § 2333(a) ...............................................................................................................13, 20

**Other Authorities**

9/11 Commission Report, http://govinfo.library.unt.edu/911/report/911Report.pdf......................9

Lindsay Maizland, *The Taliban in Afghanistan*, Council on Foreign Relations,
    accessed June 12, 2023 at https://www.cfr.org/backgrounder/taliban-
    afghanistan .............................................................................................................10

Restatement (Second) of Torts § 46 (1965).................................................................................16

Vanda Felbab-Brown, *Pipe dreams: The Taliban and drugs from the 1990s into
its new regime*, The Brookings Institution, accessed June 12, 2023 at
    https://www.brookings.edu/articles/pipe-dreams-the-taliban-and-drugs-from-
    the-1990s-into-its-new-regime/.................................................................................10

## I.      INTRODUCTION

This action arises out of the events of September 11, 2001, during which members of the al Qaeda[1] terrorist network hijacked four commercial airliners and used those planes as weapons in coordinated terrorist attacks on the United States (the "September 11th Attacks").  Plaintiffs in the above-captioned case include personal representatives and eligible family members of individuals killed in the September 11th Attacks.

Non-U.S. National Plaintiffs[2] in Exhibit A[3] and Exhibit B[4] ("Moving Plaintiffs")[5] to the Goldman Declaration, by and through their counsel, Anderson Kill P.C., respectfully submit this

---

[1] Arabic words and names are spelled differently in various sources. Plaintiffs have strived for consistency as much as possible, but original spellings are maintained in quoted sources.

[2] Exhibit A includes immediate family members of 9/11 decedents where the 9/11 decedent was not a U.S. National *and* the immediate family member was also not a U.S. National on September 11, 2001. Exhibit B includes 9/11 decedent estates where the 9/11 decedent was known not to have been a U.S. National on September 11, 2001.

[3] All exhibits referenced herein are annexed to the Declaration of Jerry S. Goldman, Esq. ("Goldman Declaration"), which is being filed contemporaneously with this Memorandum of Law. The plaintiffs listed in Exhibit A are the relatives of a 9/11 decedent.  In the case of a relative who died subsequent to the 9/11 decedent, the claim is brought by the personal representative of the relative's estate.  As noted herein, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative, except in the cases specifically identified herein and in the Goldman Declaration, where a party has filed a petition to be so appointed, which petition, on information and belief, is unopposed, but has not yet been granted. Goldman Declaration at ¶¶ 4-14, 18-19.

[4] The plaintiffs listed in annexed Exhibit B are the personal representatives of a 9/11 decedent's estate.  In all cases, they are submitting claims for compensatory damages as a result of the 9/11 decedent's death. Where there are expert reports submitted with the Goldman Declaration demonstrating economic losses as a result of death, as outlined therein and herein, the personal representatives are additionally seeking economic damages in the amounts set forth in annexed Exhibit B.  Those personal representatives who, at this time, are seeking to solely recover compensatory damages for pain and suffering are specifically reserving their right to seek an additional judgment, at a future date, for economic damages, based upon then-submitted evidence.  As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the decedent, except in the cases specifically identified herein and in the Goldman Declaration, where a party has filed a petition to be so appointed, which petition, on information and belief, is unopposed, but has not yet been granted. Goldman Declaration at ¶¶ 4-14, 20-28.

Memorandum of Law in support of their Motion for Final Judgments as to Liability and for Partial Final Judgments as to Damages against the Taliban.

Moving Plaintiffs include immediate family members of 9/11 decedents where the 9/11 decedent was not a U.S. National *and* the immediate family member was also not a U.S. National on September 11, 2001, and also include 9/11 decedent estates where the 9/11 decedent was known not to have been a U.S. National on September 11, 2001. Moving Plaintiffs seek a liability determination and default judgment as to their common law claims of intentional infliction of emotional distress (solatium), survival, and wrongful death against the Taliban. Moving Plaintiffs also seek a damages determination consistent with the determinations of prior subsets of plaintiffs in this MDL.

For the reasons set forth below, in the Goldman Declaration, as well as those set forth in prior motions, Moving Plaintiffs respectfully move this Court for an Order:

(1)     extending the Court's Order at ECF No. 3067 granting a judgment as to liability for the members of the O'Neill family to Moving Plaintiffs; AND,

(2)     granting Moving Plaintiffs motion for entry of default judgment as to liability against the Taliban; AND,

(3)     determining that service of process in the above-captioned matter was properly effected upon the Taliban for Moving Plaintiffs; AND,

(4)     determining that this Court possesses personal jurisdiction over the Taliban for Moving Plaintiffs; AND,

(5)     determining that this Court has subject-matter jurisdiction over the Taliban under the common law for actions arising out of wrongful death, assault, battery, and

---

[5] Moving Plaintiffs were not previously granted judgments against the Islamic Republic of Iran ("Iran") for the damages sought herein and either have a pending judgment motion against Iran, or plan to file a motion for judgment against Iran shortly.

intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks;[6] AND,

(6)     finding the Taliban jointly and severally liable with Iran and awarding damages judgments under applicable common law to Moving Plaintiffs identified in Exhibit A and Exhibit B against the Taliban in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases against Iran; AND,

(7)     awarding intentional infliction of emotional distress (solatium) damages to those Moving Plaintiffs identified in Exhibit A in the amounts of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in Exhibit A; AND,

(8)     awarding the estates of the 9/11 decedents, through the personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as identified by Moving Plaintiffs set forth in Exhibit B, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th Attacks, as set forth in Exhibit B; AND,

---

[6] While "the Court [ ] extended the O'Neill liability judgments against the Taliban, ECF Nos. 3067, 3163, and 3043-1, to all plaintiffs added to O'Neill pursuant to the Court's orders at ECF Nos. 7949, 8111, 8150, 8473, and 8695," *see* ECF No. 8770, because Moving Plaintiffs here include only those who were not U.S. Nationals on September 11, 2001, out of an abundance of caution Moving Plaintiffs seek a determination of liability for their common law claims.

docs-100586397.2

(9)     awarding compensatory damages to those Moving Plaintiffs identified in Exhibit B for decedents' pain and suffering in an amount of $2,000,000 per estate, as set forth in Exhibit B; AND,

(10)    awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as identified in Exhibit B, an award of economic damages in the amounts as set forth in Exhibit B; AND,

(11)    awarding Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(12)    granting Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(13)    granting permission for all other Plaintiffs not appearing in Exhibit A and Exhibit B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(14)    granting Plaintiffs such other and further relief as this honorable court deems just and proper.

The awards set forth in the attached Proposed Order represent the only direct recovery against the Taliban on behalf of Moving Plaintiffs for the claims herein and will constitute final awards and judgments against the Taliban for Moving Plaintiffs.

This motion replaces the motion at ECF No. 8589.

## II.     PROCEDURAL BACKGROUND

### A.     Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by this Court, and the form of this motion and the relief requested herein are intended to comply with various orders of this Court, including the following:

a.      The Court's January 24, 2017 Order, ECF No. 3435, requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee, ECF No. 3433] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

b.      Magistrate Judge Maas' July 30, 2012 Report & Recommendation, ECF No. 2618, and this Court's October 3, 2012 Order, ECF No. 2623, adopting the Report & Recommendation in its entirety concerning the award of damages;

c.      The Court's October 14, 2016 Order, ECF No. 3363, concerning the amounts of solatium damage awards.

d.      The Court's October 14, 2016 Order, ECF No. 3362, related to *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).

e.      The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated procedural rules.

f.      The Court's December 6, 2019 Order, ECF No. 5338, setting forth the scheduling order.

g.      The Court's April 11, 2022 Order, ECF No. 7870, setting forth specific procedures regarding seeking judgments for damages as to the Taliban.

h.      The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports submitted in support of default judgments.

i.      The Court's July 11, 2022 Order, ECF No. 8198, setting forth requirements for motions for default judgments against non-sovereign defendants.

j.      The Court's September 20, 2022 Order, ECF No. 8541, setting forth procedures for filing expert reports submitted in support of default judgments.

## B.     Related Cases

Relying on evidence and arguments submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the September 11th Attacks, this Court, on April 7, 2006, May 12, 2006, December 22, 2011, and on October 13, 2015, granted Orders of Judgment on Liability in favor of certain of the *Federal Insurance*, *Burnett*, *Ashton*, *Havlish*, and *O'Neill* groups of plaintiffs against the Taliban (*see* ECF Nos. 1754-56, 1782-97, 2516, 3067).  On November 23, 2022, the Court "extended the *O'Neill* liability judgments against the Taliban, ECF Nos. 3067, 3163, and 3043-1, to all plaintiffs added to *O'Neill* pursuant to the Court's orders at ECF Nos. 7949, 8111, 8150, 8473, and 8695." ECF No. 8770. This Court also considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the *Havlish* plaintiffs' submissions, on October 3, 2012 this Court found, among other things, that "Plaintiffs may recover for [, inter alia,] solatium…in an action under Section 1605A. 28 U.S.C. § 1605A(4). In such an action, …family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found that the following solatium awards for family members are appropriate, as an upward departure from the framework in *Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006):

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

6

ECF No. 2623 at 4.

The Court has applied the same solatium values to claims of other solatium plaintiffs as to Iran in *Burnett, Ashton, O'Neill* and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation against Iran and sought against the Taliban. *See*, *e.g.*, ECF Nos. 2618, 2623-24, 3175 at 2, 3300 at 1, 3358 at 9, 3363 at 16, 3399, 3666, 3977 at 7, 4023, 4126, 4146, 4175, 5061-62, 5087, 5138, and 5356.

In that same decision in *Havlish*, this Court also found that plaintiffs are entitled to punitive damages under the Foreign Sovereign Immunities Act ("FSIA") in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in *Ashton*. *See* ECF No. 3175 at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16, 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report and Recommendation in its entirety. ECF Nos. 3383 at 2, 3384 at 6.

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the plaintiffs' solatium damages. ECF No. 2623 at 5. The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8. Judge Daniels adopted the magistrate judge's report and

recommendation and applied the nine percent interest rate in multiple instances in *Ashton* and *Bauer*. *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1. However, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all solatium claims. ECF Nos. 3358 at 17-20, 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report and Recommendation in its entirety and applied an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 3383 at 2, 3384 at 6. The Court applied that interest rate, 4.96 percent per annum, to other plaintiffs' awards in *Burnett*.

### C.     Moving Plaintiffs

Pursuant to the Orders entered at ECF Nos. 7949, 8111, 8150, 8473, and 8695, Plaintiffs were granted leave to add additional plaintiffs to the complaint in *O'Neill, et al., v The Republic of Iraq, et al*, 04-CV-1076 (GBD-SN). The Orders specifically provide that (i) the amendments supplement but do not displace the underlying complaint; (ii) prior rulings, orders and judgments entered in this case remain in effect as to all parties; and (iii) that further service on the Taliban is not required as a result of the amendments; and (iv) that prior service orders applied.

Moving Plaintiffs were added via the First Amended Consolidated Complaint, ECF No. 8017 (May 13, 2022) and the Second Amended First Consolidated Complaint, ECF No. 8115 (June 16, 2022).

### III.   THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER THE TALIBAN.

The Taliban's pervasive intentional and material support for, and conspiracy with al Qaeda, an organization committed to attacking U.S. interests, including attacks on U.S. soil, plainly satisfies New York's long arm statute and due process. Under CPLR § 302(a)(2), personal jurisdiction exists over a person who, personally or through an agent, "commits a tortious act within the state." As Moving Plaintiffs submitted to the Court, "[t]he horrific events

8

of September 11th were the result of a world-wide terror conspiracy against the United States involving [ ] The Taliban [ ]."  *See* ECF No. 8702 ¶ 65; *see also id.* at ¶¶ 97-98, 172-73.  Courts have defined "agent" to include co-conspirators and it is well established that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under CPLR § 302(a)(2).  *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  Moving Plaintiffs have presented facts to support their *prima facie* showing that the Taliban was a witting participant in al Qaeda's attack on the United States.   The Taliban gave al Qaeda freedom of movement within the country, allowed al Qaeda members to enter and exit Afghanistan without visas or immigration procedures, permitted al Qaeda members to purchase and import vehicles and weapons, permitted al Qaeda members to use official Afghan Ministry of Defense license plates, and al Qaeda was allowed to use Afghan state-owned Ariana Airlines to bring money into Afghanistan.  9/11 Commission Report at 66.[7]  "The alliance with the Taliban provided al Qaeda a sanctuary in which to train and indoctrinate fighters and terrorists, import weapons, forge ties with other jihad groups and leaders, and plot and staff terrorist schemes." *Id.*  Bin Ladin "benefited from the broad infrastructure of such facilities in Afghanistan made available to the global network of Islamist movements. U.S. intelligence estimates put the total number of fighters who underwent instruction in Bin Ladin-supported camps in Afghanistan from 1996 to 9/11 at 10,000 to 20,000. *Id.* at 66-67.  Further, the Taliban would not expel Bin Ladin, despite being asked to do so by the State Department.  *Id.* at 121.  Instead, the Taliban continued to provide sanctuary to al Qaeda and Bin Ladin.  *Id.*  The Taliban should have expected an attack in New York given its material support to al Qaeda before and after Osama Bin Laden's February

---

[7] The 9/11 Commission Report, http://govinfo.library.unt.edu/911/report/911Report.pdf, accessed June 12, 2023.

22, 1998 fatwa that called on all Muslims to kill Americans "wherever and whenever" they are found, ECF No. 8702 at ¶¶ 104-105, and given its knowledge that al Qaeda previously attacked the World Trade Center in 1993.  Since the Moving Plaintiffs have presented facts to support their *prima facie* showing that the Taliban was a witting participant in al Qaeda's conspiracy to attack the United States, the Taliban is subject to personal jurisdiction under New York's long-arm statute before this act based on the acts of its co-conspirator, al Qaeda. *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

Further, under CPLR § 302(a)(3)(ii), personal jurisdiction exists over a person who, personally or through an agent, "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  *Merck Eprova AG v. Gnosis S.p.A.*, No. 07 CIV. 5898 (RJS), 2008 WL 5336587, at *3 (S.D.N.Y. Dec. 12, 2008).  The elements are satisfied here.  The Taliban's tortious conduct as a co-conspirator, as set forth above, resulted in the September 11th terrorist attacks that caused injury to both persons and property in New York and the Taliban should have expected consequences in New York given its material support to al Qaeda before and after Osama Bin Laden's February 22, 1998 fatwa and given that al Qaeda previously attacked the World Trade Center in 1993.  Moreover, the Taliban has derived substantial revenue from international commerce, including but not limited to opium production[8] and drug trafficking.[9] 9/11 Commission report at 171. Accordingly, Moving Plaintiffs can establish personal jurisdiction

---

[8] Vanda Felbab-Brown, *Pipe dreams: The Taliban and drugs from the 1990s into its new regime*, The Brookings Institution, accessed June 12, 2023 at https://www.brookings.edu/articles/pipe-dreams-the-taliban-and-drugs-from-the-1990s-into-its-new-regime/.

[9] Lindsay Maizland, *The Taliban in Afghanistan*, Council on Foreign Relations, accessed June 12, 2023 at https://www.cfr.org/backgrounder/taliban-afghanistan.

over the Taliban under CPLR § 302(a)(3)(ii). *Chrysler Cap. Corp.*, 778 F. Supp. at 1270; *Merck Eprova AG*, 2008 WL 5336587, at *3.

The Court exercising personal jurisdiction over the Taliban is also consistent with due process. Due process is satisfied when a defendant has certain minimum contacts with the forum so that exercise of jurisdiction is fair. *United States v. Int'l Bhd. of Teamsters*, 945 F. Supp. 609, 620 (S.D.N.Y. 1996). Personal jurisdiction under the due process clause is proper where the defendant took "intentional, and allegedly tortious, actions ... expressly aimed" at the forum state. *Calder v. Jones,* 465 U.S. 783, 789 (1984); *see also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (citing *Calder* for the proposition that a "court may exercise personal jurisdiction over defendant consistent with due process when defendant is a primary participant in intentional wrongdoing—albeit extraterritorially—expressly directed at forum"). As set forth above, the Taliban provided material financial and logistical support to al Qaeda, an organization bent on attacking the United States, including enabling al Qaeda to create, supply, and operate at least five training camps in order to create an "Islamic Foreign Legion" capable of attacking their enemies throughout the world. ECF No. 8702 at ¶ 98. Accordingly, personal jurisdiction is satisfied here and as detailed below, the Taliban was duly served.

11

## IV.   LIABILITY JUDGMENTS FOR A SUBSET OF THE O'NEILL PLAINTIFFS SHOULD BE EXTENDED TO MOVING PLAINTIFFS

### A.   The Complaint Was Duly Served

Members of the O'Neill family, in the above-captioned action, filed suit on August 20, 2003 and duly served the Taliban pursuant to publication orders, previously filed as of record, under ECF Nos. 445 and 488.  *See* Affidavit of Jerry S. Goldman, ECF No. 3043 (September 21, 2015); *see also* ECF No. 3163 (December 11, 2015) (citing ECF No. 3043-1). Goldman Declaration at ¶ 17.

Pursuant to this Court's Orders, Moving Plaintiffs do not need to re-serve the Taliban. *See* Orders at ECF Nos. 7949, 8111, 8150, 8473, and 8695 ("[f]urther service on the Taliban is not required as a result of this amendment, and prior service orders apply, including the Court's order on service by publication at ECF Nos. 445, 488").

### B.   The O'Neill Plaintiffs Obtained Liability Judgments Against the Taliban

The Clerk's Office previously issued a Clerk's Certificates of Default in the above-captioned matter. *See* ECF No. 3043-4.

As set forth below, members of the O'Neill family filed a motion for default judgments against the Taliban for liability.  Such motion was granted, with leave to seek a determination of damages at a later date.

**NAME OF CASE:**   *Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*

|  |  |
|---|---|
| CASE NO: | 04-cv-1076 |
| DATE MOTION FOR LIABILITY FILED: | 09/21/2015 |
| ECF NO. OF MOTION FOR LIABILITY: | ECF No. 3042 |
| DATE ORDER DETERMINING LIABILITY: | 10/13/2015 |
| ECF NO. OF ORDER DETERMINING LIABILITY: | ECF No. 3067 (*see also* ECF Nos. 3163, 3043-1) |

On November 23, 2022, the Court extended the foregoing liability judgments (ECF No 3067) to all plaintiffs added pursuant to the Orders at ECF Nos. 7949, 8111, 8150, 8473, and 8695. *See* ECF No. 8770.

For the reasons set forth in the motion seeking an entry of a default judgment against the Publication Defendants (including the Taliban) (ECF Nos. 3042, 3043, 3043-1), and as discussed *infra* at pages 11-21, Moving Plaintiffs respectfully request that the Court confirm that the liability order entered at ECF No. 3067 and extended to all *O'Neill* plaintiffs at ECF No. 8770, includes Moving Plaintiffs' claims under applicable common law principles.

Further, for the reasons set forth in this Court's Order at ECF No. 3163, and in this Court's Orders regarding Moving Plaintiffs at ECF Nos. 7949, 8111, 8150, 8473, and 8695, the Taliban has been properly served, and this Court has personal jurisdiction over the Taliban and subject-matter jurisdiction.

## V.   DAMAGES SHOULD BE AWARDED AGAINST THE TALIBAN JOINTLY AND SEVERALLY

On August 25, 2022, undersigned counsel filed a renewed motion for partial final judgment for damages for a subset of plaintiffs in response to this Court's July 11, 2022 Order (ECF No. 8198). *See* ECF No. 8459.  That motion is presently pending.  Counsel subsequently filed similar motions for other sub-sets of the *O'Neill* plaintiffs who have pending actions against the Taliban. By way of the instant motion, Moving Plaintiffs respectfully request that partial final judgments for damages be entered in their favor and against the Taliban jointly and severally.

### A.   Background

As the Court is aware, the victims of the terrorist attacks on September 11, 2001 were not solely United States Nationals; however, relief under the Anti-Terrorism Act, 18 U.S.C. § 2333(a) ("ATA") is limited to U.S. Nationals or immediate family members (or functional

13

equivalents) of U.S. National decedents. Nevertheless, this Court's jurisdiction reaches the claims of these non-nationals who were injured or killed and their family members by virtue of the fact that the terrorist attacks took place on U.S. soil with the largest number of victims being injured or killed only blocks from this courthouse at the World Trade Center complex in lower Manhattan. Moving Plaintiffs identified on Exhibit A are immediate family members of 9/11 decedents where the 9/11 decedent was not a U.S. National and the immediate family member was not a U.S. National on September 11, 2001. Moving Plaintiffs identified on Exhibit B are the Personal Representatives of 9/11 decedent estates where the 9/11 decedent was known not to be a United States National on September 11, 2001.

The terrorists who carried out the attacks on September 11, 2001 did not differentiate their victims by nationality. Individuals working in the North Tower of the World Trade Center when it was hit were not somehow sequestered based on their citizenship status. The terrorists attacked the United States, and while the vast majority of those who were killed in the orchestrated attacks against the United States were U.S. Nationals, a significant percentage of the victims were not. This does not mean that they were treated differently by the terrorists or that their loved ones did not experience the grief and loss that U.S. Nationals did. This disparity between U.S. Nationals and foreign nationals is reflected in the two statutes addressing the provision of support by foreign sovereigns acts of terrorism. As such, these Plaintiffs seek a determination from the Court that they are entitled to the same level of damages as U.S. National plaintiffs with claims against the Taliban.

###    1.    New York Law Applies to the Common Law Claims at Issue Here.

Moving Plaintiffs all lost a loved one on September 11, 2001 in New York and have brought claims here in New York to redress their injuries. Federal courts apply the choice-of-law rules of the state in which they sit. *Armstead v. National RR Passenger Corp.*, 954 F. Supp. 111,

14

112 (S.D.N.Y. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In this

instance, this Court should apply *lex loci delicti*. *See Armstead*, 954 F. Supp. at 112-13 (stating

"if…the tort did not occur in the domicile of either party, the *lex loci delicti*— law of the situs of

the tort—will normally apply, unless displacing it [with another relevant jurisdiction's law] 'will

advance the relevant substantive law purposes without impairing the smooth working of the

multi-state system or producing great uncertainty for litigants.'"). Following *Armstead*,

Plaintiffs' common-law claims would be analyzed under the laws of New York as the situses of

the tort.

　　This Court has previously addressed the claims of plaintiffs in this MDL under New York

common law. In an October 12, 2016 Report and Recommendation issued by Magistrate Judge

Netburn (and adopted by Judge Daniels), while addressing the appropriate rate of prejudgment

interest, the Court provided a discussion of "common law wrongful death actions" in New York

and stating that only pecuniary damages—like those sought for the estates of 9/11-decedent

estates in this case under both the ATA and FSIA—are to be awarded in a wrongful-death action

in New York which "does not permit recovery for, inter alia, the grief of survivors, the loss of

their decedent's love, companionship and society, or loss of consortium." ECF No. 3358 at 18.

But within the context of the claims against Iran, and in the same Report and Recommendation,

this Court held, "[b]ecause of the extreme and outrageous conduct inherent in acts of terrorism,

courts have held that solatium claims in FSIA terrorism cases are 'indistinguishable' from claims

of intentional infliction of emotional distress." ECF No. 3358 at 8 (citing *Surette v. Islamic Rep.*

*of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting *Wagner v. Islamic Rep. of Iran*,

172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Specific to the terrorist attacks on September 11,

2001, the Court continued:

> Terrorist attacks, by their very nature, are meant to inflict severe
> emotional distress upon society as a whole, but the loved ones of
> their victims bear a burden which is unquestionably heavier. As the
> September 11 attacks have left deep scars in the consciousness of
> this city and this nation, family members of the decedents are left
> with constant and stark reminders of their tragic losses.

*Id.* This Court has held that "the common law of intentional infliction of emotional distress

governs questions of who is entitled to recover damages…. This is necessarily so because of the

'interest in promoting uniformity of determinations with respect to [state sponsored terrorist

acts]' and the fact that generally accepted legal standards of the states provide the only steady

foundation for the rules of decision." ECF No. 3363 at 2 (emphasis added) (quoting *Estate of*

*Heiser v. Islamic Rep. of Iran*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). In fact, the courts

addressing solatium damages have relied on the Restatement (Second) of Torts § 46 (1965),

which is the precise source of the law in each of New York, Virginia, and Pennsylvania. *Id.* at 3.

While physical proximity to the incident giving rise to the emotional distress is typically a

required element of international infliction of emotional distress claims, "courts have uniformly

held that a terrorist attack—by its nature—is directed not *only at the victims but also at the*

*victims' families." Id. (*quoting *Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115 n.12

(D.D.C. 2005)); *Jenco v. Islamic Rep. of Iran*, 154 F. Supp. 2d 27, 35 (D.D.C. 2001). Acts of

terrorism are, by their very definition, extreme and outrageous and intended to cause the highest

degree of emotional distress. *Stethem v. Islamic Rep. of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C.

2002). This Court has previously found that "[t]he 9/11 terrorist attacks are contrary to the

guarantees 'recognized as indispensable by civilized peoples.'" ECF No. 2515 at 50.  Under New

York law, the tort of intentional infliction of emotional distress has four elements: "(i) extreme

and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing,

severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv)

severe emotional distress." *Zonshayn v. Sackler Sch. of Med. (New York)*, No. 21 CIV. 5720 (AT), 2023 WL 24379, at *8 (S.D.N.Y. Jan. 3, 2023).  The Taliban's intentional material support for al Qaeda, which resulted in the 9/11 attacks, as set forth above, *supra* at 9-10, constitutes extreme and outrageous conduct, and resulted in severe emotion distress for the Moving Plaintiffs.  *See* ECF No. 8702 at ¶¶ 237-245.  The Taliban's material support to al Qaeda was extreme and outrageous, and was intended to and enabled al Qaeda in carrying out the September 11th attacks.  The act of crashing two commercial airliners into the World Trade Center with the intent to kill Americans, and which, in fact, did kill Americans such as John Patrick O'Neill, Sr., constituted extreme and outrageous conduct on the part of the Taliban.  ECF No. 8702 at ¶ 238.  As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Taliban, the moving Plaintiffs suffered severe emotional distress, including extreme mental anguish and emotional and physical pain and suffering.  By way of example, family members of victims of the September 11th terrorist attacks watched in horror as the towers collapsed (ECF No. 8702 at ¶¶ 239-242) and was fearful for their loved ones' lives (ECF No. 8702 at ¶¶ 241-242).

As these Plaintiffs' intentional infliction of emotional distress claims mirror those of the solatium claims actionable under the ATA for U.S. National plaintiffs in claims arising from the same nexus of events, the Plaintiffs' recovery here under the common law should be identical to the solatium damages framework established by this Court against Iran and applied to the claims under the ATA against the Taliban.  In the FSIA context, this Court has emphasized the "interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]", but the Court's citation to *Estate of Heiser* goes on to explain that this uniformity is achieved through "well-established standards of state common law." *See* ECF No. 3363 at 2 (quoting

*Estate of Heiser*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). Such uniformity in outcome between plaintiffs who sustained injury arising from the same terrorist attacks should be simple given the application of "well-established standards of state common law" which is the undergirding of the claims of Moving Plaintiffs who lack standing to assert claims under the ATA.

Further, under New York law, the elements of wrongful death are "(1) the death of a human being born alive; (2) a wrongful act, neglect or default of the defendant by which the decedent's death was caused, provided the defendant would have been liable to the deceased had death not ensued; (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent; and (4) the appointment of a personal representative of the decedent." *In re Sept. 11 Litig.*, 811 F. Supp. 2d 883, 886 (S.D.N.Y. 2011). Here, each plaintiff listed on Exhibit B died on 9/11. As set forth above, the Taliban committed several wrongful acts which resulted in the 9/11 attacks.

The elements of wrongful death are satisfied here. Plaintiffs in Exhibit B, who were born alive, were killed (ECF No. 8702 at ¶ 224) as a direct result of the Taliban's wrongful acts, its intentional material support for al Qaeda (ECF No. 8702 at ¶ 98), which resulted in the 9/11 attacks. Further the Plaintiffs in Exhibit B left behind distributees who each suffered deep pecuniary losses by reason of decedent's death. Goldman Declaration at ¶¶ 20-27. And as detailed in the Declaration of Jerry S. Goldman, a personal representative' has been appointed to administer each of those decedents' estates. Goldman Declaration at ¶ 7.

**B.    Moving Plaintiffs with Claims Arising Under the Common Law Seek Application of Uniform Damages Principles as Those Employed Under the ATA.**

To promote the uniformity discussed above, Moving Plaintiffs asserting claims under the common law seek damages equal to those of their co-plaintiffs asserting claims under the ATA.

18

For Moving Plaintiffs in Exhibit B,[10] this would provide damages for conscious pain and suffering in the amount of $2 million per estate. The values reflected on Exhibit B indicate pain-and-suffering damages of $2 million per estate. The immediate family members asserting claims under the common law of intentional infliction of emotional distress qua solatium damages found at Exhibit A[11] also assert that they should be awarded damages against the Taliban in the same manner as those awarded damages under both 28 U.S.C. § 1605A(c) and the ATA: $12,500,000 for the spouse of a 9/11 Decedent; $8,500,000 for the child of a 9/11 Decedent; $8,500,000 for the parent of a 9/11 Decedent; and $4,250,000 for the sibling of a 9/11 Decedent. Exhibit A provides these damages figures relative to the relationship of each individual plaintiff.

## C.     Economic Damages for Estates

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA or the common law.  The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F. Supp. 2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers

---

[10] Moving Plaintiffs identified in Exhibit B are comprised of the estates of victims who perished on 9/11, in claims asserted by their personal representatives, as demonstrated by documentary evidence in the form of official documents from probate and administration proceedings from Surrogate's Court, Probate Court, Orphan's Court, and similar judicial bodies.  *See* Goldman Declaration at ¶¶ 4-14, 20-28.

[11] Moving Plaintiffs identified in Exhibit A are immediate family members  of those killed on 9/11, as demonstrated by documentary evidence of their familial relationship to a 9/11 decedent, such as birth or marriage certificates, sworn affidavits, official documents, or other documents signed under penalty of perjury, which attest to a familial relationship eligible for recovery, and, in the case of a subsequently deceased family member, a death certificate or sworn affidavit which reflects that the claimant did not predecease the 9/11 victim.  *See* Goldman Declaration at ¶¶ 4-14, 18-19.

With respect to each estate plaintiff in Exhibit A and Exhibit B, the personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative and/or 9/11 decedent estate.

victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a)."). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore*, 700 F. Supp. 2d at 81-82 (citing *Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229 (D.D.C. 2006)). Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015) (quoting *Valore*, 700 F.Supp. 2d at 78).

Previously, this Court awarded economic damages in Iran and Taliban cases for the "economic losses stemming from the wrongful death of the decedent[.]" *See, e.g.*, ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports.

Certain of the Estates set forth in Exhibit B and as specifically identified and set forth therein,[12] and which provided economic expert reports, transmitted to the Court in the Goldman Declaration, seek economic damages, similar to the plaintiffs in the prior Taliban and Iran cases in this Court under the standards set in the District of Columbia cases cited herein.  Goldman Declaration at ¶¶ 21-27.

As described at length in the Goldman Declaration, Moving Plaintiffs retained the services of John F. Beauzile, an expert who possesses a Master's Degree in Actuarial Science

---

[12] To the extent other estates are referenced in Exhibit A, these are estates of family members of 9/11 decedents who passed away after the September 11th Attacks, as opposed to the estates of the 9/11 decedents who are listed in Exhibit B.

from Columbia University ("Expert"), to evaluate the economic losses resulting from decedents'

death as a result of the September 11th Attacks.  Goldman Declaration at ¶¶ 21-27.

As described in more detail in the Goldman Declaration, and the Expert's Declaration

attached as Exhibit D thereto, we obtained, generally through a Freedom of Information Act

("FOIA") request, entire September 11th Victim Compensation Fund ("VCF") files for a

substantial number of 9/11 decedents represented by undersigned counsel.[13]  Those files, along

with other materials provided by the clients, contained various economic expert reports, VCF

applications, VCF work papers and distribution plans, VCF determinations, underlying economic

documents, and the like.  Using methodology and assumptions described in his declaration,

relying on earlier expert reports, determinations by the VCF, and other documents, the Expert

prepared up-to-date economic loss expert reports, copies of which are deemed appended to the

Expert's Declaration (Exhibit D) and being filed on ECF with access restricted to the Court

pursuant to the Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing

expert reports in support of default judgments.

Based on the foregoing, Moving Plaintiffs respectfully ask that this Court award

economic damages to the estates set forth in Exhibit B in the amounts stated therein, as

supported by the expert reports.

### D.  Punitive Damages

Moving Plaintiffs are also entitled to punitive damages.  In the *Havlish* Report and

Recommendation on damages, the magistrate judge explained that a "3.44 ratio 'has been

established as the standard ratio applicable to cases arising out of' terrorist attacks."  ECF No.

---

[13] We are still awaiting the receipt of additional VCF files from the Department of Justice via multiple
outstanding FOIA requests, the processing of which has been adversely impacted by both "normal"
delays in responding to FOIA requests as well as special circumstances related to the ongoing COVID
pandemic.

2618 at 13 (quoting *Est. of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory).  ECF No. 2623 at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases.  *See*, e.g., ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice.  ECF No. 3363 at 28.  Judge Daniels adopted Magistrate Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages.  ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date.  *See*, e.g., ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### E.    Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from

docs-100586397.2

September 11, 2001, until the date of judgment.  ECF No. 2618 at 13-14.  This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *In re Sept. 11 Litig.*, 802 F.3d 314, 343 (2d Cir. 2015).  In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest.  *Id.*  Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks.  *Id.*

However, subsequently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29.  Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of

the claims.  ECF No. 3384 at 6.  Thereafter, in *Burnett/Iran II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

In light of the Court's decisions in *Hoglan* and *Burnett*, applying the 4.96 percent rate to prejudgment interest, Moving Plaintiffs respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

## VI.   CONCLUSION

For the reasons set forth herein, the statements contained in the Goldman Declaration, as well as those set forth in prior motions for damages, Moving Plaintiffs respectfully request that the Court grant an Order:

(1)   extending the Court's Order at ECF No. 3067 granting a judgment as to liability for the members of the O'Neill family to Moving Plaintiffs; AND,

(2)   granting Moving Plaintiffs motion for entry of default judgment as to liability against the Taliban; AND,

(3)   determining that service of process in the above-captioned matter was properly effected upon the Taliban for Moving Plaintiffs; AND,

(4)   determining that this Court possesses personal jurisdiction over the Taliban for Moving Plaintiffs; AND,

(5)   determining that this Court has subject-matter jurisdiction over the Taliban under the common law for actions arising out of wrongful death, assault, battery, and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that intentionally targeted innocent civilians

resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks;[14] AND,

(6)      finding the Taliban jointly and severally liable with Iran and awarding damages judgments under applicable common law to Moving Plaintiffs identified in Exhibit A and Exhibit B against the Taliban in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, *O'Neill*, and other cases against Iran; AND,

(7)      awarding intentional infliction of emotional distress (solatium) damages to those Moving Plaintiffs identified in Exhibit A in the amounts of $12,500,000 per spouse, $8,500,000 per parent, $8,500,000 per child, and $4,250,000 per sibling, as set forth in Exhibit A; AND,

(8)      awarding the estates of the 9/11 decedents, through the personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as identified by Moving Plaintiffs set forth in Exhibit B, compensatory damages for pain and suffering in the same per estate amount previously awarded by this Court regarding other estates of decedents killed in the September 11th Attacks, as set forth in Exhibit B; AND,

(9)      awarding compensatory damages to those Moving Plaintiffs identified in Exhibit B for decedents' pain and suffering in an amount of $2,000,000 per estate, as set forth in Exhibit B; AND,

---

[14] While "the Court [ ] extended the O'Neill liability judgments against the Taliban, ECF Nos. 3067, 3163, and 3043-1, to all plaintiffs added to O'Neill pursuant to the Court's orders at ECF Nos. 7949, 8111, 8150, 8473, and 8695," *see* ECF No. 8770, because Moving Plaintiffs here include only those who were not U.S. Nationals on September 11, 2001, out of an abundance of caution Moving Plaintiffs seek a determination of liability for their common law claims.

(10)    awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedents, as identified in Exhibit B, an award of economic damages in the amounts as set forth in Exhibit B; AND,

(11)    awarding Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(12)    granting Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(13)    granting permission for all other Plaintiffs not appearing in Exhibit A and Exhibit B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(14)    granting Plaintiffs such other and further relief as this honorable court deems just and proper.

Dated:   New York, New York          Respectfully submitted,
         June 15, 2023

                                     /s/ Jerry S. Goldman
                                     **ANDERSON KILL P.C.**
                                     Jerry S. Goldman, Esq.
                                     Bruce E. Strong, Esq.
                                     Alexander Greene, Esq.
                                     Ethan Greenberg, Esq.
                                     1251 Avenue of the Americas
                                     New York, NY 10020
                                     Tel:  (212) 279-1000
                                     Fax: (212) 278-1733
                                     Email:  jgoldman@andersonkill.com
                                             bstrong@andersonkill.com
                                             agreene@andersonkill.com
                                             egreenberg@andersonkill.com
                                     *Attorneys for Plaintiffs*

26